UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALEXANDER KING,
            Plaintiff,

v.

VILLAGE OF BREWSTER; FERNANDO
QUINONES; and DON'S AUTOMOTIVE AND
TOWING, INC.,
            Defendants.
-----------------------------------------------------------x

**OPINION AND ORDER**

22 CV 8105 (VB)

Briccetti, J.:

      Plaintiff Alexander King brings this action against defendants the Village of Brewster (the "Village"), Village Police Officer Fernando Quinones, and Don's Automotive and Towing, Inc. ("Don's Automotive"), alleging Quinones physically and verbally attacked plaintiff; that Quinones and the Village falsely arrested and maliciously prosecuted plaintiff; that Don's Automotive and the Village unlawfully seized plaintiff's vehicle; and that the Village has policies and customs of using threats of violence and physical force to prevent the public from filing complaints against police officers, not disciplining officers in response to such complaints, and erasing or refusing to provide surveillance and body camera footage of officers committing misconduct.

      Now pending is the Village's motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #22).[1]

      For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Officer Quinones and Don's Automotive have not moved to dismiss the complaint. (See Docs. ##4, 21). The Village has not moved to dismiss Don's Automotive's or Quinones's cross-claims against it. (Doc. #22).

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, as well as in documents incorporated by reference or integral to the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

On October 4, 2021, Officer Quinones pulled plaintiff over for a traffic stop in the Village and issued plaintiff a speeding ticket. After the traffic stop, Quinones went to plaintiff's home and informed plaintiff's father that Quinones wanted plaintiff to visit the Village Police Department to receive more traffic tickets.

Plaintiff and his father visited the police station that afternoon. Upon arrival, plaintiff "was taken into a secure area of the Police Department," where Officer Quinones allegedly "assaulted and battered" him "without cause or justification" in front of other officers, including "upon information and belief [Village Police Chief] Del Gardo." (Doc. #1-1 ("Compl.") ¶ 11).

On October 28, 2021, Quinones pulled plaintiff over again, and issued plaintiff another ticket for his alleged use of a cell phone while driving. During this traffic stop, plaintiff claims Quinones "verbally abused and threatened" him with physical harm. (Compl. ¶ 15).

After the second traffic stop, plaintiff went to the Village Police Department to file a complaint against Officer Quinones. However, plaintiff alleges Quinones followed him to the police station and intercepted him in the parking lot. In the parking lot, Quinones questioned plaintiff as to why he was walking towards the police station. Thereafter, Quinones allegedly "physically attacked plaintiff, choked him, and threw him on the ground where he continued to assault plaintiff." (Compl. ¶ 22). Plaintiff alleges he recorded this interaction on his cell phone.

Subsequently, Officer Quinones submitted an Accusatory Instrument and an Information, each of which accused plaintiff of aggressively approaching and cursing at Quinones. Quinones wrote that he had to grab plaintiff by the shirt and physically place plaintiff on the ground to control and arrest him.

Ultimately, plaintiff was arrested on the "false charges" filed by Quinones. (Compl. ¶ 27). Further, that day, Don's Automotive towed and impounded plaintiff's parked car from the Village Police Department parking lot, "in concert with, at the behest of, and in cooperation with, the Village." (Id. ¶ 66). And the Village allegedly destroyed footage of plaintiff's encounters with Quinones or falsely claimed such footage did not exist.

According to an article published by the Rockland/Westchester Journal News on March 10, 2022 (Doc. #25-2 (the "Article")), reporters showed plaintiff's cell phone video of his October 28 altercation with Officer Quinones to Village Mayor James Schoenig ("Mayor Schoenig") and Police Chief John Del Gardo ("Chief Del Gardo"). (Id. at ECF 4, 9).[2] After viewing the video, according to the Article, Mayor Schoenig stated, "That's a tactic you use to arrest somebody. . . . Does [Quinones's] hand slide? You can't tell." (Id. at ECF 4). Further, Mayor Schoenig purportedly told reporters he thought Quinones was grabbing plaintiff by the shoulder, rather than the neck. The Article also reports Chief Del Gardo "was noncommittal about the recording" and "wouldn't answer specific questions about it while the investigation was pending"; however, Chief Del Gardo observed, "Officers some times have to do things when making an arrest, if the person isn't wanting to be arrested." (Id. at ECF 9). A screenshot from the video, included in the Article, depicts Quinones's hand on plaintiff's neck, with the caption

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

3

"Officer Fernando Quinones with his right hand at King's neck during an arrest in the parking lot at police headquarters on Oct. 28, 2021." (Id. at ECF 4).

## DISCUSSION

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the

---

[3]  Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Id.

II.     Section 1983 Claims Against the Village

The Village argues plaintiff's Section 1983 claims against it must be dismissed because plaintiff fails to state a claim pursuant to the requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978) ("Monell").

The Court agrees.

A.      Legal Standard

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." 436 U.S. at 694. Thus, to assert a Section 1983 claim against a municipality, the plaintiff must show the existence of an official policy or custom causing injury and a direct causal connection between the policy or custom and the deprivation of a constitutional right. Jones v. Town of East Haven, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision

5

to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

Further, a plaintiff may show that a constitutional violation represents the "policy or custom" of the municipality under Monell by demonstrating that "a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." Jones v. Town of East Haven, 691 F.3d at 81. "[T]o state a Monell claim premised on ratification, a plaintiff must plausibly allege that the unconstitutional conduct which the municipal policymaker ratified was part of a pattern of constitutionally offensive acts, rather than an isolated event." Wilson v. Cnty. of Ulster, 2022 WL 813958, at *14 (N.D.N.Y. Mar. 17, 2022).

"Where, however, [Monell] liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the subordinate's decision and the basis for it, as municipalities cannot be liable on a theory of respondeat superior." Davis v. City of New York, 75 F. App'x 827, 829 (2d Cir. 2003) (summary order). Further, "there must be well-pleaded allegations in the complaint supporting the inference that the [municipality] employed a policy of ratifying the unlawful conduct of its officers: a single instance of ratification is insufficient." Wilson v. Cnty. of Ulster, 2022 WL 813958, at *16.

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of" Bell Atlantic Corp. v. Twombly, 550 U.S. at 572, and Ashcroft v. Iqbal, 556 U.S. at 678. Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (quoting Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit, 507 U.S. 163, 168

(1993)). "In other words, boilerplate allegations will not suffice." Id. "The allegations that [a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order).

    B.    Analysis

Here, plaintiff alleges it was the policy and custom of the Village Police Department to: (i) "use threats of violence and physical force to prevent the public from filing complaints against" it; (ii) "assault members of the public and choke them by their neck"; (iii) "erase surveillance videos and body camera videos of its officers assaulting members of the public"; (iv) "refuse to provide surveillance videos and body cameras in response to members of the public's freedom of information act requests when the videos showed its police officers . . . violating the rights" of the public; (v) train its officers to "assault and choke" and "threaten" members of the public attempting to file a complaint; (vi) "file false criminal charges against members of the public attempting to file a complaint"; (vii) impede "investigations of the conduct of its officers"; and (viii) "refuse to investigate its own police officers or impose any disciplinary action as a result of their unlawful and unconstitutional conduct." (Compl. ¶¶ 34, 35, 37, 39, 42–46). Plaintiff also contends the Village "failed to adequately train and supervise its officers" to not "violate the rights of members of the public" and thus, the Village "has shown a deliberate indifference to the rights of members of the public." (Id. ¶¶ 96–97). However, as to plaintiff's unlawful seizure claim, plaintiff does not allege any facts regarding a Village policy or custom.

Regarding the alleged policies of threatened or actual violence against members of the public (including complainants like plaintiff), plaintiff contends Mayor Schoenig and Chief Del

7

Gardo each ratified Officer Quinones's actions in arresting plaintiff through their statements about the encounter, as reported in the Article.

As an initial matter, plaintiff has plausibly alleged Mayor Schoenig and Chief Del Gardo were policymakers, as they have "decision-making authority" for the Village. (Compl. ¶ 98).

However, plaintiff has not plausibly alleged Officer Quinones's purportedly unconstitutional actions—allegedly ratified by Mayor Schoenig and Chief Del Gardo—were part of a pattern of constitutionally offensive acts, as opposed to an isolated occurrence.

Plaintiff alleges Mayor Schoenig reacted to the video of Officer Quinones arresting plaintiff by stating Quinones was employing "a tactic you use to arrest somebody" (Article at ECF 4), and Chief Del Gardo responded by saying, "Officers some times have to do things when making an arrest, if the person isn't wanting to be arrested." (Id. at ECF 9). Drawing all reasonable inferences in plaintiff's favor, these statements could be viewed as ratifying Quinones's conduct in arresting plaintiff. However, they do not support a reasonable inference that Village policymakers ratified Village police officers' unconstitutional use of excessive force during arrests, or their pursuit of arrests and prosecutions based on false claims, as a policy or practice. See Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 324 (W.D.N.Y. 2021) (police chief's declaration at press conference that a single officer's conduct had been "within the policies and procedures of [the] department" did not allege a policy of ratification).

Regarding the Village's alleged policy and custom of threatening or filing false criminal charges against individuals to prevent them from filing complaints, erasing or refusing to provide video evidence of officers assaulting individuals, impeding investigations into officer misconduct, and refusing to investigate or discipline officers, plaintiff asserts only conclusory allegations. Such allegations do not "challenge an express rule or regulation" or a "challenged

practice [that] was so persistent and widespread as to constitute a custom or usage," and thus, they are insufficient to plead the Village is liable under Monell. See Green v. Dep't of Educ. of the City of New York, 16 F.4th 1070, 1077 (2d Cir. 2021) ("[A] general and conclusory allegation of a municipal policy or custom fails to state a plausible claim."). Moreover, plaintiff's "allegations in this regard are only of his own experience," and do not support "the existence of a municipal policy or practice." Fuentes v. Schemmer, 2023 WL 188739, at *14 (S.D.N.Y. Jan. 13, 2023); see Smith v. Westchester Cnty., 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing Monell claim where plaintiff's complaint "describe[d] only his own experiences").

Likewise, plaintiff's allegations that the Village failed adequately to train and supervise officers and that the Village acted with deliberate indifference to citizens' rights are "boilerplate assertions" which do not "allege a specific deficiency in the municipality's training," and thus are insufficient to state a claim for municipal liability. See Rivera v. Westchester Cnty., 488 F. Supp. 3d 70, 78 (S.D.N.Y. 2020).

Plaintiff also does not plausibly allege an unlawful seizure claim against the Village, as he does not plead that the Village had a policy or custom of unlawfully seizing citizens' property.

Finally, to the extent plaintiff attempts to plead the Village's Section 1983 liability based on respondeat superior, municipalities cannot be held liable on such a theory. Davis v. City of New York, 75 F. App'x at 829.

Accordingly, plaintiff's Section 1983 claims against the Village must be dismissed.

III.    State Law Claims

The Village argues the Court should dismiss or decline to exercise supplemental jurisdiction over any of plaintiff's state law claims against the Village upon dismissal of plaintiff's federal law claims against the Village.

The Court disagrees.

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Although the Court has dismissed plaintiff's federal claims against the Village, the Court has not dismissed all federal claims in this action.  Federal claims remain against Officer Quinones and Don's Automotive.  Thus, because at this stage plaintiff asserts claims against the Village, Quinones, and Don's Automotive, all arising from the same incidents, based on "values of judicial economy, convenience, fairness, and comity," Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d at 122, the Court will exercise supplemental jurisdiction over plaintiff's state law claims against the Village.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

All of plaintiff's Section 1983 claims against the Village are dismissed. Plaintiff's state law claims against the Village shall proceed.

By April 12, 2023, the Village shall file an answer to the state law claims and the cross-claims of Officer Quinones and Don's Automotive.

The Clerk is instructed to terminate the motion. (Doc. #22).

Dated: March 29, 2023
       White Plains, NY

                                          SO ORDERED:

                                          _____
                                          Vincent L. Briccetti
                                          United States District Judge